# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARSHALL FINCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cause No. 3:07-CV-308 |
| | ) | |
| SOUTH BEND HOUSING AUTHORITY | ) | |
| and SOUTH BEND HERITAGE | ) | |
| FOUNDATION, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Marshall Fincher was evicted from public housing and brought this lawsuit in state court against the South Bend Housing Authority under a variety of theories. The Housing Authority removed the case to federal court and it now presents reasons why it is entitled to summary judgment on each claim. But as the Housing Authority also points out, there is a preliminary jurisdictional question. Fincher's federal complaint asks me to review the judgment resulting from his state court eviction proceeding and I am prevented from doing so by the *Rooker-Feldman* doctrine. Why the Housing Authority would remove a case that would need to be remanded under the *Rooker-Feldman* doctrine, escapes me. In any event, like a boomerang, the claims against the Housing Authority must be **REMANDED** to state court, and I need not address the merits of the case against it.

After his eviction from the Housing Authority, Fincher tried to get an apartment in a South Bend complex that is managed by the South Bend Heritage Foundation ("the Foundation"). His application was denied by a property manager employed by the Foundation. Fincher names the Foundation as an additional defendant in this suit claiming his rights were

violated under the United States Housing Act ("USHA"), the Fair Housing Act ("FHA") and his rights as a third party beneficiary to the contracts between those organizations and their funding agencies.

The main dispute raised by the Foundation's motion for summary judgment is whether Fincher is entitled to a hearing to review the denial of his apartment application. Fincher's claims fail because the Seventh Circuit has already answered the question of whether Section 8 housing applicants are entitled to due process hearings – they aren't. In addition, he has provided no evidence to support a discrimination or retaliation claim under the FHA and no contract to support a third party beneficiary claim. Thus, the Foundation's Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

The events underlying Fincher's suit begins with his tenancy and then eviction from the Housing Authority residence and then moves to his conflict with the Foundation after its denial of Fincher's housing application. I will take the facts surrounding each defendant in separate turn.

**A.     The Housing Authority**

Fincher began renting a public assistance apartment from the Housing Authority in 2004. (Lease [DE 86-6] at 1.) He claims to be of mixed ethnic heritage, including African-American and Native-American. (Fincher Dep. [DE 86-3] at 341.) The Housing Authority receives federal funds from federal, state and municipal agencies. The lease initially set Fincher's rent at $25 a month, with progressive late fees to be charged for each month that payment was not received by the fifth calendar day. (*Id*. at 2-3.)

In November 2004, the Housing Authority became aware that Fincher was receiving more income from the Social Security Administration than originally understood, and so the Housing Authority recalculated his rent as well as back-rent that he owed. (Mammolenti Aff. [DE 85-8], ¶¶ 11-12.)  Fincher was only able to pay off some of the overdue amounts, and on December 22, 2004, the Housing Authority initiated its first eviction proceedings against him. (Lotte Aff. [DE 85-2], ¶¶ 17-19.)  Fincher was able to avoid eviction at that time by arranging for the Little Flower Church to pay the remainder of his overdue rent and late fees.  (*Id.*, ¶ 19.)

A year later, Fincher filed suit against the Housing Authority alleging that it interfered with his attempts to obtain financial assistance from the Little Flower Church by telling church members that Fincher was "scamming the system," as well as claiming that his rent calculations were incorrect.  (Complaint - Case No. 71D06-0511-PL-00415 [DE 86-4], ¶ 4.)  The suit settled on June 12, 2006 for a cash payment of $4,500.00 to Fincher in exchange for a release of claims against the Housing Authority. (Release Agreement [DE 86-4] at 1-2.)

The parties tangled once more when Fincher failed again to pay his rent.  (Lottie Aff., [DE 85-2], ¶ 21.)  The Housing Authority notified Fincher of his right to file a grievance, and after waiting the requisite fourteen days during which no grievance was filed, the Housing Authority initiated proceedings against Fincher in St. Joseph's County's small claims court for breach of his lease, seeking $211.00 plus Court costs.  (*Id.*, ¶¶ 21-22; Eviction Hearing Tr. [DE 85-12], at 4.)  On August 7, 2006, as part of that suit, the small claims court held a hearing on the Housing Authority's application for immediate possession of the apartment.  *Id.*  Fincher stated that a cashier's check, which was to be used to pay his overdue rent, was stolen out of his apartment.  (Fincher Dep. [DE 86-2], at 59-60.)  He informed the Housing Authority of the

alleged theft outside the courtroom just prior to the commencement of his eviction hearing. (*Id.* at 61.) During the hearing, the Housing Authority said that Fincher had failed to pay both the July and August rent, that he owed $520, that he had not filed a grievance, and that the Housing Authority was now entitled to immediate possession of the property. (Eviction Hearing Tr. [DE 85-12], at 5.) Fincher testified about the stolen check, stated that the credit union had agreed to cut him another cashier's check later that day, and requested additional time. (*Id.* at 6.) Nevertheless, the judge found that both July and August rent had not been paid and awarded the Housing Authority full possession of the apartment. (*Id.* at 12.) So Fincher was evicted in August 2006. (Lottie Aff. [DE 85-2], ¶ 29.)

The gist of Fincher's complaint against the Housing Authority concerns Fincher's "rights as a tenant in the South Bend Housing Authority." (Complaint [DE 1], ¶ 9. In particular, Fincher alleges that the Housing Authority violated his rights "by the termination of his tenancy." (*Id.*, ¶ 12.)

**B.      The Heritage Foundation**

Fincher then turned to a separate apartment complex and applied for Section 8 tenancy at a privately owned building managed by the Foundation. (*Id.*, ¶ 5; Weeks Aff. [DE 25-1], ¶¶ 3-4). On September 5, 2006, Bill Weeks, who was employed by the Foundation as a Real Estate Property Manager, met with Fincher to review his application in accordance with the Foundation's standard procedures. (*Id.*, ¶¶ 1, 5-6). Because Fincher had been subject to an eviction within the last three years, Weeks could not approve Fincher's application in accordance with the Foundation's policies. (*Id.*, ¶ 7). On September 19, 2006, Weeks sent a letter to Fincher informing him that the Foundation denied his application and that he could request a

meeting with Weeks to discuss the denial of the application. (*Id.*, ¶¶ 8-9).

Fincher responded by getting a lawyer, and on October 3, 2006, his attorney, Kent Hull, sent a fax to the Foundation requesting a hearing regarding the denial of Fincher's application. (Hull Aff. [DE 18], ¶¶ 2-4; Weeks Aff. [DE 25-1], ¶ 10; Pl.'s Statement of Material Facts [DE 63], ¶ 2). Weeks claims that he responded to the fax by proposing a different date. (*Id.*, ¶ 11). Fincher and his attorney say they never received that response, (Fincher Aff. [DE 18], ¶ 3; Hull Aff. [DE 18], ¶ 5) and for the present purposes, I accept their version of events. Fincher's next move was to file the present lawsuit. (Weeks Aff. [DE 25-1], ¶ 13).

After the Foundation moved for summary judgment, Fincher requested and was granted an extension to obtain documentation addressing whether the listed private owner of the apartment complex was just a "shell" for the Foundation and whether the Foundation was, in turn, a "surrogate" for the City of South Bend. Fincher submitted three articles from the *South Bend Tribune* and a series of deeds. The Foundation then moved to strike Fincher's affidavits and additional documentation produced in support of his proposition that the Foundation was not a private actor.

After this initial round of briefing was completed, it was revealed that the parties were confused as to whether Fincher had intended his Fair Housing Act and United States Housing Act claims towards the Foundation or just the Housing Authority. Since Fincher said he had indeed meant to include those claims against both defendants, I gave the Foundation additional time to supplement its summary judgment briefing and Fincher additional time to respond.

**DISCUSSION**

**A. The Housing Authority's Motion for Summary Judgment**

The initial issue I must grapple with in the Housing Authority's Motion for Summary

Judgment is one of jurisdiction. Fincher's complaint is really an effort to do something about the

fact that he was evicted from his apartment for not paying the rent. But by taking this route, he

runs headlong into the *Rooker-Feldman* doctrine which, if it applies, strips me of jurisdiction.

So I must explore this issue first.

The *Rooker-Feldman* doctrine derives its name from two decisions of the United States

Supreme Court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia*

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Boiled to its essence, the *Rooker-Feldman*

doctrine "precludes lower federal court jurisdiction over claims seeking review of state court

judgments … [because] no matter how erroneous or unconstitutional the state court judgment

may be, the Supreme Court of the United States is the only federal court that could have

jurisdiction to review a state court judgment." *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d

529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)).

Therefore, if a claim is barred by the *Rooker-Feldman* doctrine, the federal court lacks subject-

matter jurisdiction over the case. *Id.* Since *Rooker-Feldman* deals with a matter of subject

matter jurisdiction, I must address this issue first, and if the doctrine applies, I am precluded

from addressing the merits. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 607 (7th Cir. 2008).

The *Rooker-Feldman* doctrine "excludes federal subject matter jurisdiction only when,

after state proceedings have ended, a losing party in state court files suit in federal court

complaining of an injury caused by the state court judgment and seeking review and rejection of

that judgment." *Holt v. Lake County Board of Commissioners,* 408 F.3d 335, 336 (7th Cir.2005) (citing *Exxon Mobil Corp v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284-85 (2005)).  In determining whether it is being asked to review a state court judgment, the court needs to inquire whether the "federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim."  *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996) (citation omitted).  Claims that directly seek to set aside a state court judgment are easy cases; they are *de facto* appeals and are barred without additional inquiry.  *Taylor*, 374 F.3d at 532.

The more difficult case is when the federal plaintiff is not specifically asking the court to vacate a state court judgment, but is doing so indirectly.  In those cases, *Rooker-Feldman* still deprives lower federal courts of jurisdiction if the claims made in federal court are "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 486; *see also Kelley*, 548 F.3d at 603; *Brokaw*, 305 F.3d at 664.  The question of whether the claims are "inextricably intertwined" is a bit abstract.  The Seventh Circuit has called it "metaphysical." *Taylor*, 374 F.3d at 533.  But the question is really a practical one of whether "the district court is in essence being called upon to review the state-court decision." *Id.* (citations and quotations omitted).

Once a court determines that a claim is inextricably intertwined, i.e., that it indirectly seeks to set aside a state court judgment, it must then determine whether the plaintiff had a reasonable opportunity to raise the issues in the state court proceedings. *Id.* at 533.  After all, if the plaintiff did not have a reasonable opportunity to raise the issues in state court proceedings, then it would be difficult to conclude that the issues are inextricably intertwined with the state court judgment. *Brokaw,* 305 F.3d at 668; *Long v. Shorebank Development Corp.*, 182 F.3d 548,

558 (7th Cir. 1999).

To summarize: the federal district court lacks jurisdiction if it is being asked to set aside a state court judgment.  The court also lacks jurisdiction if it is being asked to entertain a claim that was not argued in state court but is nonetheless inextricably intertwined with the state court judgment.  However, a federal claim is only inextricably intertwined with a state court judgment if the plaintiff had a reasonable opportunity to raise the issues it now raises in state court.

The only identifiable injury alleged in Fincher's current complaint against the Housing Authority is Fincher's eviction.  The complaint states that Fincher was a resident of the Housing Authority, that it terminated his tenancy, and that the actual reasons for his termination are not clear to him.  Complaint [DE 1], ¶ 3.  He further claims that his rights as a third party beneficiary have been violated "by the termination of his tenancy."  *Id*., ¶ 11.  There are no other adverse actions or injuries discussed.  Although his prayer for relief is generalized, seeking unspecified declaratory judgment and injunctive relief, as well as damages of $10,000 for each claim, all proposed forms of relief are designed to remedy the perceived injury received as a result of the state court's eviction ruling.  His claims are therefore inextricably intertwined with the state court judgment.  In other words, no matter what the claim is – be it under the United States Housing Act, Fair Housing Act, Third Party Beneficiary of Contracts, or Retaliatory Eviction – the injury from which Fincher seeks relief was only complete when the St. Joseph County Superior Court entered its eviction order.  *See Long*, 182 F.3d at 557.

State eviction and foreclosure proceedings have frequently been held to trigger the *Rooker-Feldman* doctrine, even when federal constitutional claims are subsequently raised in federal court.  *See Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir.

2007); *Holt*, 408 F.3d at 336; *Chambers v. Habitat Co.*, 68 Fed. Appx. 711, 713-14 (7th Cir. 2003); *Clabault v. Shodeen Mgmt.*, 2006 WL 1371460, at * 2 (N.D. Ill. May 15, 2006); *Flowers v. Burton Wells, Ltd.*, 2002 WL 31307421, at * 3 (N.D. Ill Oct. 9, 2002). The Seventh Circuit has repeatedly instructed that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Holt*, 408 F.3d at 336 (citing *Long*, 182 F.3d at 557; *Ritter v. Ross*, 992 F.2d 750, 755 (7th Cir. 1993)). There is no reason to deviate from that precedent here, especially because Fincher has failed to put forward any injury other than the state court eviction itself. And providing a remedy for his eviction would require the review and rejection of the state court proceeding, the very act which *Rooker-Feldman* prevents.

Nothing in *Jones v. Brennan*, 465 F.3d 304, 305 (7th Cir. 2006), a case that Fincher relies on, mandates a different result. In *Jones*, the Seventh Circuit addressed whether a plaintiff was prevented by *Rooker-Feldman* from raising a claim that various officials – including probate judges, the county's public guardian, two of his deputies, and four private lawyers – had conspired in the course of probate proceedings involving her father's estate to deprive her of property without due process. *Id*. In support of the conspiracy, it was alleged that the judges received improper *ex parte* communications from the guardian ad litems, failed to require the guardians to provide accountings of their management of the estate, failed to provide plaintiff with notice and a hearing before replacing one of the guardians, and that the guardians conducted an illegal search of her personal belongings. *Id*. The Seventh Circuit held that the *Rooker-Feldman* doctrine did not apply to prevent the plaintiff from bringing her claim. *Id*. It found that the plaintiff was not attacking the state court judgment because the plaintiff had brought her

federal case before the state probate proceedings were even over. *Id.* This is a key point, in light

of the Supreme Court and Seventh Circuit's previous instructions that the *Rooker-Feldman*

doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584,

590 (7th Cir. 2005) (quoting *Exxon Mobil*, 544 U.S. at 284.)

       In Fincher's case, he waited for his eviction proceedings to be completed before bringing

this case, and so *Jones* is not on point. Also, the injury complained of in *Jones*'s federal suit was

something distinct from the state court judgment. Jones alleged that the conspiracy led to

various injuries other than the loss of state probate interests, including an illegal search of her

property and a quickening of her father's death. *Jones*, 465 F.3d at 305. Fincher, on the other

hand, points to no injury other than the eviction, which was the very subject of the state court

proceedings held against him.

       Through recent supplementary pleading, Fincher asserts that the Order of Possession

issued against him by the state court was not a final order within the meaning of *Rooker-*

*Feldman*. He points to Indiana Rule of Civil Procedure 14(A)(4), which provides that "appeals

from the following interlocutory orders are taken as a matter of right . . (4) for the sale or

delivery of the possession of real property." While it is true that an interlocutory order, prior to

final judgment, does not fall within the scope of the *Rooker-Feldman* doctrine, any state order

may be subject to *Rooker-Feldman* if "the losing party in state court filed suit in federal court

*after the state proceedings ended*." *TruServ*, 419 F.3d at 591 (quoting *Exxon Mobil*, 544 U.S. at

292)(emphasis supplied by *TruServ*). Fincher's August 7, 2006 eviction hearing transcript

shows that a trial on the Housing Authority's $ 211.00 breach-of-lease claim was scheduled for October 13, 2006. Eviction Hearing Tr. [DE 85-12], at 4. Fincher filed the present suit on May 30, 2007, well after that date. [DE 2]. And Fincher has presented nothing to demonstrate that the state court suit was still going on when he brought the present case. Indeed, I can take judicial notice of the fact that a check of the public docket has revealed that the state case was in fact dismissed on August 18, 2006 – several months before the filing of the present case. *See Opoka v. Immigration and Naturalization Service*, 94 F.3d 392, 394 (7th Cir. 1996).

The fact that Indiana Appellate rules may have allowed Fincher to challenge the eviction through an interlocutory appeal does not mean the order is rendered "non-final" until the end of time. Under Rule 14(a), he only had thirty (30) days after the entry of the order to file an interlocutory appeal. Failing that, once the proceedings in which the order was made came to an end, the normal appeals process kicked in. In Indiana, a final judgment is one which "disposes of all claims as to all parties." Ind. R. App. Proc. 2(H)(1). A party has thirty (30) days after the entry of final judgment to initiate appeal. Ind. R. App. Proc 9(A). The Seventh Circuit has on one occasion defined a state proceeding as "ending" in the *Rooker-Feldman* context "when the highest court capable of review has considered the state decision, or where no party to the case seeks further action." *See Kathrein v. McGrath*, 166 Fed. Appx. 858, 862 (7th Cir. 2006) (citing *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 24-25 (1st Cir. 2005). Because there appears to be no further opportunity for Fincher to appeal his state court proceedings, I must conclude that those proceedings have "ended" and that his federal complaint asks me to review a final state court judgment.

Fincher's late attempt to flag an asserted claim seeking an alternative injury to the

eviction does not hold up. He raises for the first time in his response brief the idea that the late fee schedule that led to his eviction was in fact an illegal penalty clause. Pl.'s Response and Cross-Motion [DE 95], at 4. He does not connect this theory with any of the four claims raised against the Housing Authority in the complaint. But even if he had, it could not have been used to overcome the *Rooker-Feldman* bar since Fincher never paid the late fees and thus was only injured by them to the extent their existence was a component of his eviction order. Lottie Aff. [DE 85-2], ¶ 28.

Fincher also points, without much explanation, to *Neudecker v. Boisclair Corp.*, 351 F.3d 361 (8th Cir. 2003), presumably for the principle that FHA claims can be brought not just for refusals to sell or rent to individuals within a protected class, but for discrimination against these individuals post-acquisition. *C.f., Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n.*, 388 F.3d 327, 329 (7th Cir. 2004)(suggesting that the FHA has no language providing relief for post-acquisition discrimination). He then suggests the Housing Authority sought his eviction because they were offended by his attempts to distribute clothing and food to needy people, and that conflicts over these activities led to the earlier state lawsuit which was settled on June 12, 2006. *See* Pl.'s Response and Cross-Motion [DE 95], at 9. But even if these facts make out a colorable FHA claim, it does nothing for Fincher in terms of avoiding *Rooker-Feldman*. At the end of the day, he fails to suggest any discriminatory actions on the part of the Housing Authority other than commencing eviction proceedings, and therefore is asking for a review of the state court order concerning those proceedings.

Any suggestion that a retaliation claim under the FHA would be independent of Fincher's state court judgment would be nearly identical to the argument rejected by the Seventh Circuit in

*Garry v. Geils*, 82 F.3d 1362, 1368-69 (7th Cir. 1996). In *Garry*, the plaintiff brought an action to get out from under a state court judgment condemning a portion of his property. *Id*. at 1364. The plaintiff alleged the condemnation action was waged against him in retaliation for his political activities, in violation of the First and Fourteenth Amendments. *Id*. at 1364-65. The Seventh Circuit held that "the injury alleged was only complete when the state court actually condemned the property," and that consequently the "plaintiffs' claim of political retaliation, though not raised in the state condemnation action, is inextricably intertwined with that condemnation action." *Id*. at 1368; *see also*, *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 729 (7th Cir. 1993)(holding *Rooker-Feldman* doctrine barred Section 1983 "takings" claim alleging that village depressed sale price by commencing condemnation action while foreclosure action was pending). Thus, even if Fincher could show the Housing Authority operated in bad faith and sought his eviction purely to retaliate against Fincher's social justice activities and previous litigation, the proper venue for that claim was the eviction proceeding itself.

Fincher claims he did not have a reasonable opportunity to raise his present claims during the initial state proceeding. He points to the *Long* case for support where the Seventh Circuit held that a plaintiff's Fair Debt Collection Practices Act ("FDCPA") federal claims were not precluded by *Rooker-Feldman* because Illinois law actually prevented her from bringing those claims in state court, thus depriving her of a "reasonable opportunity" to litigate them. *Long*, 182 F.3d at 559. Although Fincher is correct in noting that counterclaims are not *required* in Indiana small claims court, *see Buckmaster v. Platter*, 426 N.E.2d 148, 150 (Ind. App. 1981), there was nothing denying him the *opportunity* to bring them as part of his eviction proceeding. Fincher himself acknowledges the concurrent jurisdiction granted to both state and federal courts

to hear FHA claims.  Pl.'s Response and Cross-Motion [DE 95], at 3 (citing 42 U.S.C. § 3613(a)(1)(A)).

In fact, this very issue was addressed recently by the Seventh Circuit in *Kelley*, 548 F.3d at 606-07.  The Court in *Kelley* refused to broaden the *Long* exception so as to cover claims not brought earlier in an Indiana small claims court proceeding.  *Id*.  "While we recognize that small claims court was not the preferred forum for plaintiffs to raise their specific federal claims, they were not precluded from their claims in state court."  *Id*.  Although the addition of such counterclaims may have exceeded the small claims jurisdictional amount, the Seventh Circuit held that *Rooker-Feldman* still applied, relying on the ability of a small claims court defendant to have his case transferred to the plenary docket and thereby avail himself of a forum to bring its other claims.  *Id*. (citing Indiana Small Claims Rule 2(B)(10); *see also*, I.C. § 33-29-2-7 ("Upon the deposit of seventy dollars ($70) in the small claims docket by the defendant, the court shall transfer the claim to the plenary docket.  Upon transfer, the claim then loses its status as a small claim.").

So although raising his claims during his eviction proceeding may have kicked Fincher out of the small claims forum, under *Kelley* this consequence is not enough to circumvent the *Rooker-Feldman* doctrine.  *See also Witt v. Westfield Acceptance Corp.*, 2002 WL 826372, at *3 (S.D. Ind. March 25, 2002)(finding that *Rooker-Feldman* precluded plaintiff from bringing FDCPA claim in federal court after it could have been raised during previous small claims proceeding).  The fact that Fincher chose not to bring his claim in a state court proceeding does not mean he was denied the reasonable opportunity to do so.

In sum, Fincher's present complaint is inextricably intertwined with the earlier state

eviction proceedings. I could not find in Fincher's favor in this case without calling into question the validity of the state court judgment of eviction. And Fincher had a reasonable opportunity to litigate the claims he presents here in that earlier proceeding. So *Rooker-Feldman* bars my consideration of the claim.

28 U.S.C. § 1447(c) provides that, for cases removed to federal court, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See also*, *Callico v. City of Belleville*, 99 Fed. Appx. 746, 749 (7th Cir. 2004) (applying statute to district court's dismissal under *Rooker*). Remand to state court, as opposed to dismissal without prejudice, is therefore the appropriate resolution of Fincher's claims against the Housing Authority. *See Dempsey v. JP Morgan Chase Bank, N.A.*, 272 Fed. Appx. 499, 502 (7th Cir. March 31, 2008)(instructing district court to remand mortgage-agreement claim precluded by *Rooker-Feldman* to state court and affirming district court's dismissal of separate execution-of-writ claim under Rule 12(b)(6)).

In remanding this case, it's difficult to ignore the circuitous nature of this result, since the case began in state court to begin with, and was only removed at Defendants' prompting. Nevertheless, the parties agree that this is the correct course of action in the event that I agreed with the Housing Authority's *Rooker-Feldman* analysis. It is now up to the Indiana state court to decide whether Fincher's claims against the Housing Authority, even those raised under federal law, may continue.[1]

B.      **The Foundation's Motion For Summary Judgment**

---

[1] Fincher also moved for partial summary judgment [DE 94], but because I have found that the *Rooker-Feldman* deprives me of jurisdiction, I need not consider the motion. *Kelley*, 548 F.3d at 606-07 (7th Cir. 2008).

*Rooker-Feldman* does not play a role in the disposition of the Foundation's Motion for Summary Judgment, as Fincher charges the Foundation not with an injury already addressed by the state court eviction proceeding, but for improperly denying his housing application at the new apartment after his eviction from the Housing Authority residence. Fincher asserts three claims against the Foundation under the USHA, as a third-party contract beneficiary, and pursuant to the FHA.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56, *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986), *Doe v. R.R. Donnelly & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The moving party has the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets his burden, the non-moving party must designate "specific facts" which demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e), *Id.*, 477 U.S. at 324. A fact is material if it will affect the outcome of the case under the applicable law such that a "reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 1.      Housing Act Claim

The purpose of the United States Housing Act is to provide safe and sanitary low-income housing to eligible recipients. 42 U.S.C. §1437 (2000). "Section 8" is the program by which subsidies for low-income housing are distributed. 42 U.S.C. § 1437f. The Secretary of Housing and Urban Development enters into annual contribution contracts ("ACC") with the local public

housing authorities ("PHA"). 42 U.S.C. § 1437f(b)(1). The ACC sets out the maximum monthly rent to the owner of an apartment building and stipulates other contractual provisions which must be included in all agreements with private landlords. 42 U.S.C. § 1437f(c) and (d). The ACC states that in all agreements with a private owner the "selection of tenants shall be the function of the owner." 42 U.S.C. § 1437f(d)(1)(A), 24 C.F.R. §§ 880.603, 881.601, 883.701 (2008). The owner is responsible for determining the eligibility and selection of tenants, 24 C.F.R. §§ 880.603, 881.601, 883.701 and can also determine if an applicant is eligible or "otherwise acceptable." 24 C.F.R. §§ 880.603(b)(1), 881.601, 883.701. The action by which an owner processes applications for tenancy, verifies eligibility, and selects tenants is commonly called "certification."

To say the least, the record is a bit scant here. For example, Fincher has not produced in his response to summary judgment the individual contracts entered into between the Foundation and its funding agencies. Similarly, he has not identified any contract terms or provisions he believes provide him with the basis for a claim as a third party beneficiary. He has not even identified the particular Section 8 program at issue here. There are several Section 8 programs, each calling for varying procedures as mapped out in the federal regulations. These programs include housing assistance payments for new construction, substantial or moderate rehabilitation, and for state housing agencies. *See* 24 C.F.R. pts. 880, 881, 882, 883. Fincher alleges in his complaint only that his "rights under the United States Housing Act, 42 U.S.C. § 1437 *et. seq.* was violated [sic]," but does not specify which rights under the act are at play. Section 1437, by itself, is merely a policy statement and does not provide a private right of action. *See Thomas v. Chicago Housing Authority*, 919 F.Supp. 1159, 1164 (N.D. Ill. 1996); *Hale v. Chicago Housing*

*Authority*, 642 F.Supp. 1107, 1109 (N.D. Ill. 1986); *see also*, *Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210, 1217 (4th Cir. 1981) ("We therefore conclude that § 1437 - or the other policy statements, §§ 1441, 1441a - does not create any legal cognizable rights in tenants of programs funded under the housing statutes.").

The parties focus almost entirely on whether Fincher had a right to a hearing to challenge the denial of his housing application. *Eidson v. Pierce* is the leading case in the Seventh Circuit addressing whether applicants for tenancy in low-income housing are entitled to a hearing. 745 F.2d 453 (7th Cir. 1984). In *Eidson*, the plaintiffs brought due process claims alleging they were denied due process hearings after their applications for tenancy were rejected. *Id*. at 455-56. The plaintiffs were income-eligible and on waiting lists for Section 8 housing and their applications were denied by private owners. *Id*. at 454. The Seventh Circuit held that the plaintiffs had no constitutionally protected property interest in Section 8 housing benefits entitling them to hearings to review the denial of their applications. *Id*. The court noted that although the regulations comprising Section 8 show an intent to benefit lower-income families, they also acknowledge a limited quantity of available housing by allowing the private owners of assisted property to select tenants at their discretion from the set of income-eligible applicants. *Id*. at 460-61. In addition, the court said the relevant question was, "as a practical matter, what would be at issue in the hearings plaintiffs seek?" *Id*. at 460.

The approach in *Eidson* is pragmatic because it recognizes that a due process hearing would ultimately be fruitless since, even if plaintiffs proved that the information relied on by the owners when denying the applications was false, plaintiffs would still not be entitled to override the owner's free choice in choosing between two eligible applicants. *Id*. This is because

18

"[s]ection 8 is aimed at providing benefits to a class of lower-income families, but the program establishes no preferences regarding the allocation of these scarce benefits among the eligible class members." *Id*. at 461.

*Eidson* was careful to distinguish itself from an earlier opinion, *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981), in which the Seventh Circuit did hold that tenants – as opposed to applicants – were third-party beneficiaries of relevant Section 8 contracts and that they did have protected property interests in Section 8 retroactive subsidy payments. But in that case, as *Eidson* later made clear, the plaintiffs were already living in the assisted housing; their applications had already been certified. *See Eidson*, 745 F.2d at 460.

As an applicant, Fincher is trying to rehash the arguments already rejected by *Eidson*, and he admits as much. In his response brief he states his intent to ask the Supreme Court to overturn *Eidson*. Response [DE 63] at 3-4. But he also acknowledges that I have no choice but to follow *Eidson*. *Id*. The key to the holding in *Eidson* was the wide discretion available to the landlords and owners in rejecting housing applicants, and that same level of discretion was available for the Foundation in rejecting Fincher's application based on his prior evictions.

Fincher also tries to distinguish *Eidson* by arguing that the Foundation is not just a private actor but a "shell" for the City of South Bend, and so is constrained by "stricter due process requirements." Unfortunately, this line of argument is neither here nor there. It has sent both parties scurrying down an unnecessary rabbit hole of extra discovery and motions to strike in their attempts to establish the link between the Foundation and the City of South Bend, when it really doesn't matter in the end.

The Constitution guarantees due process only for actions taken by the government. The

Fifth and Fourteenth Amendments play no role in interactions between private citizens. *See Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). The Seventh Circuit in *Holbrook* concluded that the housing owner in that case was a government actor. *Holbrook*, 643 F.2d at 1276-77. It then went on to decide what process was due to existing tenants who are removed. *Id.* at 1277. It is true that the Seventh Circuit in *Eidson* chose not to address a secondary argument (posed by the defendants in that case) that the property owners were not government actors conducting themselves in a manner to trigger the Fifth Amendment. But this was only because it already concluded that there was no legitimate claim of entitlement for non-certified applicants. *Eidson*, 745 F.2d at 464. In other words, even if Fincher provided incontrovertible proof that the Foundation is nothing but a shell for the City of South Bend, he would still only manage to put himself on the same footing of the plaintiffs in *Eidson,* not beyond them.

Fincher insists that "governmental entities have stricter due process requirements," than private individuals serving as state actors. But that's incorrect. It's not a question of more or less due process rights. Rather, one is either entitled to such rights, or one is not. That is because the same analysis is used for both governments and those acting as government actors. If there is no nexus between the government and the private actor, then there is no due process requirement at all. The determination of whether a party should be considered a government party can be a complex issue, blurred by such matters as government funding, subsidies, licensing, and contracting. *See Blum v. Yaretsky*, 457 U.S. 991 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830 (1982). If a plaintiff manages to clear that hurdle and show a "sufficient nexus between the state and the challenged action," *see Jackson Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974), only then may he try to show that he has a claim of entitlement under the due process

clause. So Fincher need not have bothered trying to prove the first question, because I can already assume the Foundation is a government actor due to its role in the Section 8 process. But with respect to that second question, I am completely bound by *Eidson*'s holding that applicants – as opposed to existing tenants – for Section 8 housing do not have a right to due process hearings to review the denial of their applications.

## 2. Third Party Beneficiary Claim

Fincher also asserts a right to a hearing based on a third party beneficiary claim, which he argues is not foreclosed by *Eidson*. Even if it is not, Fincher cannot prevail. His opposition to summary judgment contains a glaring flaw. There is no contract. Or at least, Fincher has never presented one, nor pointed to any provisions he believes were written for his benefit. As explained above, the one thing *Eidson* surely established is that an applicant has no protected property interests in the regulatory framework of Section 8. The only avenue left for Fincher was to point to some term or provision of a contract that grants him a hearing. He has not done so and has therefore failed to meet the requirement that an opponent of summary judgment "go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial." *Paul v. Theda Medical Center, Inc.*, 465 F.3d 790, 793 (7th Cir. 2006).

Fincher gives cursory mention to "contractual arrangements between landlords and governmental funders," see Response [DE 63] at 3, but has not attached these contracts to his complaint or his summary judgment briefing. Likewise, there is no sign of the ACC entered into between HUD and the local PHA. He has not cited to or described a single provision of any contract upon which he might be basing his claim. "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment when a party must show what evidence it has

that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal citations omitted); *see also*, *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261-62 (9th Cir. 1993)(affirming summary judgment where plaintiff did not provide contracts necessary to support claim); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (3d ed. 2008) ("If no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless and the movant is entitled to a judgment as a matter of law."). With no evidence to support it, Fincher's third party beneficiary contract claim must be dismissed.

### 3. Fair Housing Act Claim

Given the sparse allegations made in his complaint, it is difficult to determine what sort of claim Fincher is asserting under the FHA.[2] The most likely candidate is a retaliation claim, since the complaint's short list of factual allegations describes little other than his prior lawsuit against the Housing Authority, his eviction from his Housing Authority tenancy, and the Foundation's subsequent denial of his application at the new apartment complex. Complaint [DE 1], ¶¶ 1-6. This, coupled with his focus in the briefing on the relationship between the Foundation and the City of South Bend, implies that Fincher believes the Foundation denied him housing because of his earlier lawsuit against the city's housing authority.

---

[2] Or even which defendant he is asserting it against. It was only after my direct questioning at a January 6, 2009 status conference, following the first full round of briefing, that Fincher acknowledged and the Foundation realized that Fincher intended his FHA claim to include the Foundation. After making note of the clear ambiguity, I granted both the Foundation and Fincher time for more written argument to address the FHA claim. Counsel for the Foundation asked specifically if the new filing should be treated as a new motion or a supplementary brief, to which I answered that it was to be considered supplementary. Fincher's argument, therefore, that the Foundation's supplementary brief did not comport with Local Rule 56.1 concerning summary judgment motions, is a nonstarter.

Sections 3603-3606 of the FHA protect against discrimination in housing on the basis of race, color, religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3603-3606. Section 3617 also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

The Seventh Circuit has yet to identify the elements of a *prima facie* case of FHA retaliation, but the Eighth and Ninth Circuits have as follows: (1) that the plaintiffs engaged in statutorily protected activity; (2) defendants took adverse action against them; and (3) there is a causal connection between the two. *Neudecker v. Boisclair Corp.,* 351 F.3d at 363-64; *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir.2001). District courts from this circuit have followed this approach. *See Bloch v. Frischholz,* 2008 WL 244287, at * 2 (N.D.Ill. Jan 24, 2008); *Krieman v. Crystal Lake Apartments Ltd. P'ship*, 2006 WL 1519320, at * 11 (N.D. Ill May 31, 2006).

Fincher presented no evidence to show he was engaged in protected activity. His best shot was his filing of a previous lawsuit against the Housing Authority, but Fincher provided neither the complaint nor any details as to the subject matter of that dispute. His only description of it says "the case alleged, in part, that the South Bend Housing Authority had failed to comply with federal rules issued by the United States Department of Housing and Urban Development pertaining to due process hearing rights of tenants." *See* Complaint [DE 1], ¶ 4. There is no suggestion that he complained about discrimination or tried to enforce any other right that could be construed as protected by the FHA.

As it happens, I do not have to guess as to what issues Fincher raised in the earlier suit. That complaint was provided, not by Fincher, but by the Housing Authority, as an exhibit attached to its own summary judgment briefing. Housing Authority Mem. in Support of Mot. for Summary Judgment, Ex. B [DE 86-4]. The document shows that Fincher raised no FHA matters and that the rights protected by Sections 3603-3606 were not mentioned. The specific questions raised by that complaint were 1) whether Mr. Fincher had violated rules pertaining to residents of the Housing Authority; 2) whether the Housing Authority interfered with attempts by Mr. Fincher to obtain financial assistance from Little Flower Church for the purpose of paying his rent and, in that connection, whether an employee of the Housing Authority described his efforts as "scamming the system;" 3) whether Mr. Fincher is entitled to a tenancy on a month–to-month basis or on a yearly basis; and 4) whether Mr. Fincher's rent was properly calculated. *Id.* In short, there was not a whiff of any charges of discrimination on the basis of race, color, religion, sex, handicap, familial status, or national origin, and therefore Fincher was not engaged in activities protected by the FHA and could not have been retaliated against in violation of Section 3617.

Fincher also does not have any evidence supporting an FHA discrimination claim. It is unclear from the complaint which form of discrimination he believes the Foundation to have participated in. So long as it was not basing its denial of Fincher's application on race, color, religion, sex, handicap, familial status, or national origin, the Foundation is free to use its own discretion when choosing applicants and steer clear of FHA liability. *See Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir. 1994)(stating that under the FHA, it was within the defendants "discretion" to deny an application based on the plaintiff's criminal history).

To state a *prima facie* case of discrimination under the FHA, a plaintiff must show that he is 1) a member of a protected class; 2) the defendant was aware of plaintiff's class membership; 3) plaintiff was ready, willing and able to buy, rent or otherwise inhabit the dwelling; and 4) the defendant refused to deal with him. *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). Fincher is of mixed ethnic heritage. Pl.'s Resp. to Foundation Supp. Br. [DE 110] at 7. However, Fincher fails to state that the Foundation was aware of his membership of a protected class, let alone provide evidence to demonstrate that fact. The only document in the record at all relevant is a "Housing Development Corporation" application form filled out by Fincher, which lists his ethnicity as "Black, Indian Irish." Fincher Dep. Ex. 21 [DE 86-4] at 4. But the form is dated October 19, 2006, which is after all events complained of in the complaint, including the Foundation's denial of Fincher's application and even Fincher's retention of an attorney to challenge the denial. There is no apparent link between this Housing Development Corporation and the Foundation, and Fincher does not attempt to establish one. *See* Fincher Dep. [DE 86-3], at 333-346. My best guess is that this was an application Fincher filled out for an entirely different residence, or for some other housing assistance program. In any case, there is no fact or evidence supporting the "awareness" prong of an FHA discrimination claim against the Foundation.

Fincher also cites to cases standing for the proposition that individuals have standing to bring FHA claims when discriminated against based on their association with members of a protected class. *See e.g., Cato v. Jilek*, 779 F.Supp. 937, 940 ("Courts have consistently held that when a white person and a black person who live together are denied housing because of the black person's race, both parties are injured by that discriminatory treatment."). But Fincher

does not demonstrate any associations he may have had with protected class members. He states his belief that he was evicted from the Housing Authority residence because of his activities helping needy people, but he doesn't explain how this group fell into a protected class. When a plaintiff makes only a perfunctory argument and fails to cite any record evidence in support of a claim, summary judgment can and should be granted. *See Davis v. Carter,* 452 F.3d 686, 691-92 (7th Cir.2006) (recognizing that perfunctory arguments without proper cites to the record are deemed waived); *Ienco v. Angarone,* 429 F.3d 680, 684 (7th Cir.2005) (finding that plaintiff waived claims by failing to develop them in response to defendant's motion for summary judgment). With no evidence even coming close to addressing the first two elements of a claim for FHA discrimination, Fincher's claim does not survive summary judgment.

Even if Fincher had established a *prima facie* case, he has not demonstrated that the Foundation's asserted legitimate, nondiscriminatory rationale for denying Fincher's application (his prior eviction) was pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 , 804 (1973). A plaintiff can show pretext either "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha v. Sears Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993). Where a plaintiff lacks direct evidence of pretext, he at least "must show that the employer's reason is not credible or that the reason is factually baseless." *Perez v. Illinois,* 488 F.3d 773, 777 (7th Cir. 2007). This means that he must show that there is some deceit afoot. Once again, Fincher has provided no evidence to doubt the credibility of the Foundation's articulated reason (his earlier eviction) for denying his application. The only facts he presents in favor of his FHA claim are those describing the actions of the Housing Authority, not the Foundation. Pl.'s Resp.

to Foundation Supp. Br. [DE 110] at 7.  In fact, they are merely a "copy and paste" of his arguments presented in his earlier brief opposing the Housing Authority's Motion for Summary Judgment. Pl.'s Opp. to Housing Authority Sum. J. [DE 95] at 8-9.  All the evidence listed by Fincher describes actions taking place prior to his eviction from the Housing Authority apartments, and before the Foundation even came into the picture.  Thus, he does not even discuss the denial of his application to the Foundation apartment building, let alone answer why the Foundation's stated reason was pretextual.

## CONCLUSION

For the foregoing reasons, the Housing Authority's Motion for Summary Judgment [DE 83] is **GRANTED** and the case against the Housing Authority is **REMANDED** back to state court due to a lack of subject matter jurisdiction.  Fincher's Cross-Motion for Partial Summary Judgment against the Housing Authority [DE 94] is **DENIED**.  Further, the Foundation's Motion for Summary Judgment [DE 37] is **GRANTED**.  Foundation's Motion to Strike Fincher's Supporting Affidavits [DE 64] and Motion to Strike Portions of Fincher's Verified Response and Supporting Documentation [DE 75] are **DENIED** as moot. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendant South Bend Heritage Foundation.

**SO ORDERED.**

**ENTERED**: March 20, 2009

s/ Philip P. Simon

PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT